426 So.2d 720 (1983)
Charles BUCHANAN, et ux.
v.
TANGIPAHOA PARISH POLICE JURY, et al.
No. 82 CA 0342.
Court of Appeal of Louisiana, First Circuit.
January 5, 1983.
*721 Curtis M. Baham, Jr., Hammond, Ernest Lee Caulfield, Anthony Glorioso, New Orleans, for plaintiffs-appellants.
France Watts, III, Franklinton, for defendant-appellee Tangipahoa Parish Police Jury and Travelers.
Gail Sheffield, Amite, Louis M. Phillips, Baton Rouge, for defendant-appellee Tangipahoa Parish Police Jury.
Charles M. Reid, Amite, for defendantappellee Wilbur Creel and Dan Hawkins.
*722 Before COVINGTON, LANIER and ALFORD, JJ.
LANIER, Judge.
This is a suit in tort by Charles J. Buchanan and his wife, Amie L. Buchanan, against the Tangipahoa Parish Police Jury (Police Jury) and its insurer, the Travelers Insurance Company (Travelers), for damages allegedly caused when a bridge owned and maintained by the Police Jury partially collapsed while Mrs. Buchanan was attempting to cross it in her car. The Police Jury filed an answer to the plaintiffs' petition asserting the affirmative defenses of contributory negligence and assumption of risk. Travelers answered separately and denied coverage on the basis of policy exclusions. In the alternative, Travelers asserted the affirmative defenses of contributory negligence and assumption of risk.[1] In a supplemental and amending petition, the Buchanans added Wilbert Creel, in his capacity as road foreman for the Police Jury, and Dan Hawkins, in his capacity as road and bridge supervisor for the Police Jury, as party defendants to these proceedings. Creel and Hawkins answered and asserted the affirmative defenses of contributory negligence and assumption of risk. Hawkins also asserted that he was not an employee of the Police Jury at the time of the accident. The trial judge determined that Amie L. Buchanan was contributorily negligence and dismissed the petition. This devolutive appeal followed.

I. FACTS
For several days prior to January 14, 1977, heavy rains fell in the area of the Wilmer community in the Parish of Tangipahoa, Louisiana. This rainfall caused flooding conditions along Big Creek and its branches. On January 14, 1977, Amie L. Buchanan was operating a 1970 Cadillac automobile owned by her and her husband in a northerly direction on Jackson Road in the vicinity of the Wilmer community. The Jackson Road is a narrow gravel country road. As Mrs. Buchanan approached a branch of Big Creek, she observed that the bridge over the stream and its approaches were partially flooded. The bridge was constructed of creosoted pilings and wooden decking and was owned and maintained by the Police Jury. Flood waters from the stream were passing over the roadway on both sides of the bridge. The bridge was elevated in the middle and the middle portion was out of the water. Both sides of the bridge were covered by flood waters. Mrs. Buchanan knew that this bridge was flooded several times a year and had observed several vehicles traveling in the direction of the bridge that day. Mrs. Buchanan attempted to cross the bridge. When her vehicle reached the center of the bridge, the center span partially collapsed and dropped two or three feet submerging the front end of the vehicle. Mrs. Buchanan attempted to open the door of the car to escape, but was unable to do so. She crawled out of the window of the car onto its roof. She got onto the trunk of the vehicle and jumped to the bank of the stream to safety. She then walked to the home of her sister-in-law, a short distance away.

II. CONTRIBUTORY NEGLIGENCELA.C.C. ART. 2315
Contributory negligence is an affirmative defense to a negligence tort action under La.C.C. art. 2315 and the party relying upon it has the burden of proving it. Contributory negligence is conduct on the part of a plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which a plaintiff must conform for his own protection is that of a reasonable man under like circumstances. Failure to take every precaution against every foreseeable risk or to use extraordinary skill, caution, and foresight does not constitute negligence or contributory negligence. The alleged victim is required only to use reasonable precautions, and his conduct in this regard *723 is not negligent if, by a commonsense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances. Dupas v. City of New Orleans, 354 So.2d 1311 (La.1978); Smolinski v. Taulli, 276 So.2d 286 (La.1973). In particular, a motorist has the right to assume that a highway on which he is traveling is clear and free from hidden defects. However, when a motorist knows that there is a dangerous defect or hazard in a roadway ahead which should be avoided for his own safety, he can no longer assume that the highway is safe for his travel. Sepulvado v. State, Department of Highways, 395 So.2d 858 (La.App. 2nd Cir.1981); Morrow v. State, 377 So.2d 430 (La.App. 2nd Cir. 1979); Coker v. Illinois Central Railroad Company, 267 So.2d 781 (La.App. 2nd Cir. 1972), writ refused 263 La. 628, 268 So.2d 679 (1972).
The photographs filed in evidence show that flood waters in the stream were swirling across the roadway and the bridge on both sides of the bridge's elevated center. The evidence shows that the force of the flood put substantial stress on the bridge structure. Just prior to the accident, Wilbert Creel, the road foreman for the Police Jury, had inspected the bridge and determined that a hazardous situation existed and was in the process of securing warning barricades (after taking a coffee break) when the accident occurred. Mrs. Buchanan had an alternate route available to her to return to her home over a concrete bridge. This would have eliminated the hazard of attempting to cross a small wooden bridge under flooding conditions. Nevertheless, Mrs. Buchanan elected to attempt to cross the Jackson Road Bridge in the face of an obviously hazardous situation. In view of these facts, the trial judge was correct in determining that Mrs. Buchanan was contributorily negligent. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).

III. VICTIM FAULTLA.C.C. ART. 2317[2]
A majority of the Louisiana Supreme Court has interpreted Article 2317 of the Civil Code to hold an owner or custodian of a thing strictly liable for damages caused by a thing in his custody. The elements of proof for a plaintiff in an Article 2317 case are: (1) the thing which caused the damage was in the care and custody of the defendant; (2) the thing had a vice or defect that created an unreasonable risk of injury to another; and, (3) the injury was caused by the defect. Defenses available to a defendant in an Article 2317 claim are (1) victim fault; (2) fault of a third person; or (3) damage caused by an irresistible force. Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980); Loescher v. Parr, 324 So.2d 441 (La.1975); Dye v. Kean's, 412 So.2d 116 (La.App. 1st Cir.1982), writ denied 413 So.2d 506 (La. 1982).
Does the defense of "victim fault" in strict liability cases include the concept of contributory negligence? The answer to this question requires an analysis of the civilian doctrine of "fault" in Louisiana law. Articles 2315 through 2324 of the Civil Code comprise the code's entire chapter of legal principles regulating offenses and quasi-offenses. Loescher v. Parr, supra. Responsibility for damages may be based on absolute, strict or negligent liability theories. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982). The policy considerations for each of these theories of liability are different.
Liability for ultrahazardous activities is absolute. The policy reasons for this are set forth in Kent v. Gulf States Utilities Company, supra, 498, as follows:
"... There are some activities in which the risk may be altogether reasonable and still high enough that the party ought not *724 undertake the activity without assuming the consequences. Such activities include pile driving, storage of toxic gas, blasting with explosives, crop dusting with airplanes, and the like, in which the activity can cause injury to others, even when conducted with the greatest prudence and care. 2 F. Harper and F. James, The Law of Torts, § 14.4 (1956); W. Prosser, The Law of Torts § 78 (4th ed. 1971).
"For these particular activities, Louisiana courts have imposed an absolute liability (as contrasted to the strict liability previously discussed), which virtually makes the enterpriser an insurer. The enterpriser, whether or not negligent in any respect, causes the damage, and the injured party recovers simply by proving damage and causation.
"In these cases of absolute liability (or liability without proof of negligence or other fault), liability is imposed as a matter of policy when harm results from the risks inherent in the nature of the activity. The steps taken by the enterpriser to protect others from the inherent risks of the activity are not relevant to the determination of liability."
(Footnote Omitted).
(Underscoring Added).
In Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), an absolute liability or no fault case, the Louisiana Supreme Court held that the doctrine of assumption of risk[3] was available as a defense but that contributory negligence was not.
The policy reasons for the strict liability theory of recovery (fault under La.C.C. arts. 2317, 2318, 2320, 2321 and 2322) are set forth in Loescher v. Parr, supra, 446, as follows:
"When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. "The fault of the person thus liable is based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others. Thus, the person to whom society allots the supervision, care, or guardianship (custody) of the risk-creating person or thing bears the loss resulting from creation of the risk, rather than some innocent third person harmed as a consequence of his failure to prevent the risk. His fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard against the condition or activity (by the person or thing for which he is responsible) which creates the unreasonable risk of harm to others."
In a strict liability situation where both parties are free from negligence, the burden of the loss is placed on the person legally responsible for the person or thing which causes the loss. Should this same rule be applicable where the negligence of the victim is a cause of the loss?
In Kent, supra, the court observed that the only difference between the strict liability and negligence theories of recovery was the element of the defendant's scienter. Under the negligence rule, it must be shown that defendants either knew or should have known of the risk, whereas under strict liability the claimant is relieved only of proving that the defendant knew or should have known of the risk. In either case, the claimant must still prove an unreasonable risk of harm that resulted in damage. While the basis for determining the existence of the duty is different between strict liability and negligence, the duty which arises is the same. Kent v. Gulf States Utilities Company, supra, 497-498.
*725 Because the ultimate duty which arises under either the strict liability or negligence theory is the same, there is no rational policy basis for precluding contributory negligence as a defense to one and not the other. The conduct of the claimant should be analysed the same in either situation. In Dorry v. LaFleur, 399 So.2d 559, 560 (La. 1980), a strict liability case under La.C.C. art. 2322 for a defective roof, a plurality of the Louisiana Supreme Court observed as follows:
"Where a plaintiff's negligence contributes to his own damages, there is no reason to ignore his fault in every case simply because the defendant's liability is based on some legal fault other than negligence. Quite to the contrary, the plaintiff's negligence should carry more, not less, consequence when the defendant is strictly liable, but less culpable than the plaintiff."
This position is supported by the excellent reasoning found in Carpenter v. State Farm Fire and Casualty Company, 411 So.2d 1206, 1210 (La.App. 4th Cir.1982), writ denied 415 So.2d 951 (La.1982):
"Until recently, it has been held invariably that contributory negligence is no defense to strict liability. Langlois v. Allied Chemical Corp., Inc., 258 La. 1067, 249 So.2d 133 (1971). But this rule is borrowed largely from the common law as applied in other states. There, strict liability is imposed because social policy requires that those who profit by engaging in ultrahazardous or abnormally dangerous activities, and those who create such conditions, or those engaged in the manufacture of products, must pay their way.
"As Prosser states:
`The courts have tended to lay stress upon the fact that the defendant is acting for his own purposes, and is seeking a benefit or a profit of his own from such activities, and that he is in a better position to administer the unusual risk by passing it on to the public than is the innocent victim.' Prosser, Law of Torts, 4th Ed., (1971), p. 495.
"Again, it is this social policy, rather than logic, which traditionally prevents courts from recognizing contributory negligence as a defense. The illogic of this principle, as Prosser puts it, is that `the fault of the plaintiff will relieve the defendant of liability when he is negligent, but not when he is innocent.' Id. at 522.
"The Louisiana Civil Code sometimes imposes strict liability for conduct which would not necessarily warrant the imposition of strict liability under the common law tradition. Where this is the case, there can be no basis for applying the social policy, borrowed from the common law, which prohibits contributory negligence as a defense."
(Emphasis Added).
In Sullivan v. Gulf States Utilities Company, 382 So.2d 184, 189-190 (La.App. 1st Cir.1980), writ denied 384 So.2d 447 (La. 1980), a case involving a defective concrete foundation pier under Article 2317, this court observed as follows:
"It would be ironic in this case for the defendant to be able to escape liability in a negligence action because of the plaintiff's contributory negligence, yet be held liable under a strict liability theory when the plaintiff has been equally at fault in bringing about the harm. We think the policy reasons underlying Loescher v. Parr point away from such an ironic result. Loescher was based on the proposition that, out of two innocent parties, the owner or guardian of a thing should pay for any damage caused by that thing. We do not have two innocent parties in this case, as the word innocent is understood in strict liability law. For purposes of this case, we think the measure of conduct necessary to achieve the appellation `contributory negligence' is the same measure necessary to amount to `victim fault' under Article 2317."
Numerous cases have now equated contributory negligence with victim fault in strict liability situations (especially under La.C.C. art. 2317). Carpenter v. State Farm Fire and Casualty Company, supra; Darbonne v. State Farm Mutual Automobile Insurance *726 Co., 408 So.2d 300 (La.App. 3rd Cir.1981); LeBlanc v. State, Louisiana Department of Highways, 405 So.2d 635 (La.App. 3rd Cir. 1981), writ granted 409 So.2d 657 (La.1982); Edwards v. State, Department of Transportation & Development, 403 So.2d 109 (La. App. 3rd Cir.1981), writ denied 407 So.2d 733 (La.1981); Jackson v. Tri-State Elevator Company, Inc., 401 So.2d 538 (La.App. 3rd Cir.1981); Wilkinson v. Hartford Accident & Indemnity Co., 400 So.2d 705 (La. App. 3rd Cir.1981), reversed on other grounds 411 So.2d 22 (La.1982); Godwin v. Government Employees Insurance Company, 394 So.2d 751 (La.App. 3rd Cir.1981); Sullivan v. Gulf States Utilities Company, supra; Hebert v. Maryland Casualty Company, 366 So.2d 1044 (La.App. 1st Cir.1978), writ denied 369 So.2d 708 (La.1979); Entrevia v. Hood, 413 So.2d 954 (La.App. 1st Cir.1982); Flair v. Board of Commissioners of Orleans Levee Board, 411 So.2d 614 (La. App. 4th Cir.1982); Stewart v. Sam Wallace Industrial Company, 409 So.2d 335 (La.App. 1st Cir.1981), writ denied 413 So.2d 497 (La. 1982). Contra: Rodrigue v. Dixilyn Corporation, 620 F.2d 537 (5th Cir.1980), cert. denied 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981).
In Langlois, supra, 249 So.2d 140, the court found that the defense of contributory negligence presupposed original negligence and that where negligence was not an ingredient of "fault", contributory negligence was not a defense. The Louisiana concept of "fault" encompasses both strict and negligent liability cases. Loescher v. Parr, supra. It is not theoretically inconsistent under Louisiana law to hold that the "fault" of contributory negligence is a bar to recovery where the claim is based on "fault" as defined under the strict liability theory. As pointed out in Kent, while the basis for determining the existence of a duty is different between strict and negligent liability, the duty which ultimately arises is the same. Where both parties are free from negligence, the strict liability theory places the burden of the loss on the person legally responsible for the person or thing which causes the loss. However, where the conduct of the claimant has contributed to the loss, such conduct should be judged the same in strict and negligent liability cases because the duty on the defendant is the same in both cases. Such a rule makes it prudent for a claimant to take reasonable steps to provide for his own safety in either situation and would not reward him for failing to do so. With the advent of comparative negligence (perhaps comparative "fault" would be a better term), the harsh effect of the "all or nothing" contributory negligence rule will be substantially tempered.[4]
*727 The operation and maintenance of a small wooden bridge on a gravel country road in Tangipahoa Parish in the instant case was neither ultrahazardous nor abnormally dangerous. The Police Jury did not manufacture products for sale or realize a profit from the operation of the bridge. Under the particular facts and circumstances of this case, there is no valid policy reason to bar the defendants from asserting the affirmative defense of contributory negligence. The contributory negligence of Mrs. Buchanan defeats her claim under this theory of recovery.

IV. CONCLUSION
For the foregoing reasons, the decision of the trial court is correct and is affirmed at the appellants' costs.
AFFIRMED.
NOTES
[1] Travelers filed a motion for summary judgment based on the policy exclusions which was heard and taken under advisement, but was not ruled upon prior to the trial on the merits.
[2] The plaintiffs did not allege strict liability under La.C.C. art. 2317 in either their petition or supplemental and amending petition. However, this theory of recovery was asserted in the pretrial order filed in accordance with Rule 11 of the Court Rules of the Twenty-First Judicial District Court (West's, Louisiana Rules of Court, p. 510 [1982]) and in the post trial briefs of the parties filed in the trial court.
[3] Thus, the "fault" concept of assumption of risk was applied in a "no-fault" theory of recovery case.
[4] See, for example, La.C.C. art. 2323 as amended by Act 431 of 1979 and La.C.C.P. art. 1811(B):

Art. 2323.
"When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
(Emphasis Added).
Art. 1811(B).
. . . . .
"B. In cases to recover damages for injury, death or loss, the court shall submit to the jury special written questions inquiring as to:
1. Whether a party from whom damages are claimed, or the person for whom such party is legally responsible, was at fault, and, if so:
(a) Whether such fault was a proximate cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage;
2. If appropriate, whether another involved person, other than the person suffering injury, death or loss, was at fault, and, if so:
(a) Whether such fault was a proximate cause of the damages, and, if so:
(b) The degree of such fault, expressed in percentage;
3. If appropriate, whether there was negligence attributable to any party claiming damages, and, if so:
(a) Whether such negligence was a proximate cause of the damages, and, if so:
(b) The degree of such negligence, expressed in percentage; and
4. The total amount of damages sustained as a result of the injury, death or loss, expressed in dollars.
"The court shall then enter judgment in conformity with the jury's answers to these special questions and according to applicable law."
(Emphasis Added).