GUIDRY, Judge.
Plaintiff received serious injury in a one vehicle accident which occurred during the evening of April 15, 1977, on Louisiana highway 13 in Acadia Parish, Louisiana. According to plaintiff, while driving an 18 wheel tractor-trailer north on highway 13, he was forced off the highway and onto the shoulder of the road as a result of the blinding headlights of an oncoming vehicle. When the right wheels of his vehicle meandered onto the shoulder he immediately lost control of his vehicle and ultimately overturned in a water-filled ditch alongside the highway. Plaintiff alleges that he lost control of his vehicle because of a severe “drop-off” between the road surface and the shoulder. The surface of highway 13 was overlaid several months prior to the accident by L. H. Bossier, Inc., under a contract with the Louisiana Department of Transportation and Development, but the shoulders had not been brought up to the level of the roadway.
Plaintiff named as defendants, L. H. Bossier, Inc. and its insurers, Travelers Insurance Company[1] and Reliance Insurance Company; Acadia Parish Police Jury and its insurer, American Employers Insurance Company;[2] and the Louisiana Department of Transportation and Development. Bossier and Reliance filed a third party demand against the Department seeking full indemnity and in the alternative contribution. The Department filed a like third party demand against Bossier and Reliance. Continental Insurance Company intervened in the suit to assert its claim as the worker’s compensation insurer of plaintiff’s employer.
Prior to the trial, plaintiff’s demands against the Acadia Parish Police Jury and its insurer, American Employers Insurance Company were dismissed by summary judgment. Plaintiff did not appeal from such judgment. On the day of trial, Continental assigned to plaintiff its claim for the amount of worker’s compensation benefits and medical expenses paid, which claim aggregated the sum of $9969.60. Continental’s intervention was thereafter dismissed. In addition, plaintiff settled with Bossier and Reliance for the sum of $23,500.00, in consideration of which plaintiff agreed to dismiss his suit against these defendants and further agreed to assume responsibility, if any, for any judgment rendered against Bossier and Reliance pursuant to the Department’s third party demand. Accordingly, Bossier and Reliance were dismissed as parties defendant and the matter proceeded to trial with the Department as the sole remaining defendant.
The trial court rendered judgment in favor of the plaintiff awarding him damages *1209 in the sum of $64,500.00. The Department’s third party demand against Bossier and Reliance was dismissed. The Department appeals.
The record reveals the following pertinent facts to be without serious dispute.
Pursuant to state contract number 57-02-04, L. H. Bossier, Inc., overlaid the surface of approximately 8 miles of Louisiana highway 13. The total overlay amounted to AW of asphalt mix. After final inspection the Department formally and unqualifiedly accepted the work done under the aforesaid contract on December 2, 1976. At the time of acceptance the shoulders had not been brought up to the level of the roadway such that there existed a “drop-off” from the surface of the roadway to the shoulder of three or four inches.[3] The Department was aware that this condition existed when it accepted the Bossier contract. In explanation of the Department’s action, Mr. Dempsey White, then Chief Engineer of the Department, testified that because of the narrowness of the shoulders and the lack of lateral support on La. 13, it was necessary to use compacted limestone rather than compacted shell to bring the shoulders to grade. The Bossier contract specified compacted shell. Therefore, the Department concluded that the Bossier contract should be accepted and the shoulders brought to grade by the Department. The shoulders were ultimately brought to grade with compacted limestone in June of 1977, some six months following acceptance of the Bossier contract and some two months following plaintiff’s accident.
On April 15, 1977, at approximately 7:30 p. m. plaintiff was driving an 18 wheel tractor-trailer in a northerly direction on Louisiana highway 13. At a point some three miles south of Crowley, plaintiff was blinded by the bright lights of an oncoming vehicle and forced onto the shoulder. At the time plaintiff was traveling approximately 45 miles per hour. According to plaintiff’s testimony, immediately upon his truck hitting the shoulder he lost control. He testified that because of the “drop-off” and the roughness of the shoulder, he was bouncing so much that he could not brake his vehicle or regain the highway. There is no question but that plaintiff’s vehicle never regained the highway but angled to the right some 370' at which point the tractor-trailer overturned in a water filled ditch alongside highway 13. As a result of the accident plaintiff sustained multiple cuts and bruises and closed fractures of the left tibia and fibula. He was trapped in his vehicle for approximately one and half hours before being extricated.
NEGLIGENCE OF THE DEPARTMENT
The Department has a duty to see that state highways are reasonably safe for persons exercising ordinary care and reasonable prudence. Included in this duty is the maintenance of the shoulders of the highways in a reasonably safe condition. LaBorde v. Louisiana Department of Highways, 300 So.2d 579, (La.App. 3rd Cir. 1974), writ denied, 303 So.2d 182 (La.1974); Brown v. Louisiana Department of Highways et al., 373 So.2d 605 (La.App. 3rd Cir. 1979), writ denied, 376 So.2d 1269; Sinitiere v. Lavergne, 391 So.2d 821 (La.1980). In Sinitiere, supra, our Supreme Court stated:
“Liability based upon negligence is imposed when the Department is actually or constructively aware of a hazardous condition and fails to take corrective action within a reasonable time.”
The record confirms that the Department failed in its duty to maintain the shoulders along Louisiana highway 13 in a reasonably safe condition. It is clear that a drop-off of four inches between the traveled roadway and the shoulder creates an extremely hazardous condition. Similar conditions were held to be extremely hazardous in Brown, supra, Sinitiere, supra, and in McDaniel v. State of Louisiana, Department of Transportation and Development, 398 So.2d 88 (La.App. 3rd Cir. 1981), *1210 writ refused, 404 So.2d 279 (La.1981). In the instant case the Department allowed such a condition to exist along highway 13 for a period in excess of six months although fully aware of the existence of such condition. Under the circumstances the Department was clearly negligent. It is equally clear that the Department’s negligence was a cause in fact of the accident. As stated by the learned trial judge in his written reasons:
“This court concludes that six months after knowledge of the defective condition (based on October 1976 correspondence) is not a reasonable time and the failure to correct this defect was negligence. This negligence was a cause in fact of the accident. Had the Department not been negligent in its failure to maintain the shoulder, the accident would not have occurred.”
WAS PLAINTIFF GUILTY OF CONTRIBUTORY NEGLIGENCE?
Appellant urges that on the occasion in question plaintiff was guilty of negligence which contributed to the accident. In this connection appellant argues that once on the shoulder of the road plaintiff failed to comply with the standard of care required of skilled truck drivers. Specifically, appellant suggests that plaintiff immediately attempted to regain the roadway without allowing his vehicle to decrease its forward motion down to a reasonably safe speed before attempting to guide it back on the roadway. We find no merit in this contention.
The Department’s duty to maintain the shoulders of highways in reasonably safe condition extends in favor of motorists who reasonably believe that conditions require them to drive onto the shoulder although no actual hazard exists. Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir. 1976), writ denied, 342 So.2d 218 (La.1977); Sinitiere v. Lavergne, supra. In Rue v. State Department of Highways, 372 So.2d 1197 (La.1979), the Department’s duty was extended to include persons who drive onto the shoulder inadvertently where there was neither knowledge nor reason to know of either a defective condition of the shoulder or any other defective condition that would make such action hazardous. In the instant case there is no evidence indicating that plaintiff was aware of the hazardous condition which existed. However, in any event he did not inadvertently stray onto the shoulder but moved onto the shoulder after being blinded by the headlights of an oncoming vehicle. Thus, under the circumstances, plaintiff’s movement onto the shoulder of the road did not constitute negligent conduct. Plaintiff’s actions after he moved onto the shoulder of the road cannot be considered negligent conduct, even for a skilled truck driver, in that the record shows that because of the severe “drop-off” he immediately lost control of his vehicle and was never again able to gain such control so as to avoid the overturn of his vehicle. Although plaintiff, in his testimony, does allude to the fact that he was attempting to regain the roadway, a fair reading of his testimony clearly shows that he immediately lost control of his vehicle and was bouncing so much that he could not even brake so as to reduce his speed. We agree with the trial court that the evidence does not indicate any negligence on the part of plaintiff.
THE DEPARTMENT’S OTHER SPECIFICATIONS OF ERROR
In addition to the issues already discussed appellant sets forth the following specifications of error:
(a) The trial court erred in awarding the plaintiff the excessive sum of $64,500.00.
(b) The court erred in dismissing the Department’s third party demands against Bossier and Reliance.
In brief defendant makes no argument in support of either of the aforestated specifications of error and, although we consider them to be abandoned, we conclude that such specifications are without merit for the reasons assigned by the trial court which we are pleased to adopt as our own:
“... The Court does not find Bossier, Inc. was the cause of the damage since its work was accepted by the defendant over four months before the accident. Responsibility for the shoulder’s condition falls on the defendant.
*1211 The plaintiff has proven he suffered moderately severe injuries as a direct result of the accident. He incurred numerous lacerations, abrasions, contusions, sprains, and a fracture of his left tibia. Due to difficulty in the healing of the fracture an operation was performed removing approximately one (1) inch of plaintiff’s fibula bone leaving a permanent one (1) inch gap in that bone. The doctors have assessed a 10 to 15% disability to his leg. Mr. Toups experienced pain and mental anguish for the l'A hours he was trapped inside his truck after the accident. He experienced some pain while recovering from the accident and the surgery. He still suffers pain in his ankle occasionally. Mr. Toups is now performing substantially the same job for the same employer as before the accident, but he did suffer a loss of wages while he was unable to work. The Court concludes an amount of $64,500 should be awarded to plaintiff as compensation for his medical expenses, loss of wages, disability, mental anguish, pain, and suffering-”
For the reasons assigned, the judgment appealed from is affirmed at appellant’s cost.
AFFIRMED.
STOKER, J., concurs.

. Travelers Insurance Company was mistakenly joined as the insurer of Bossier and was dismissed from the suit on motion of plaintiff.

. Commercial Union Assurance Company was originally joined as the insurer of the Acadia Parish Police Jury, however, the pleadings re-fleet that American Employers Insurance Company was the insurer of the Acadia Parish Police Jury at the time of accident and that such company was incorrectly referred to as Commercial Union Assurance Company.

. The trial judge in his written reasons for judgment states: “The court concludes there was a three to four inch drop from the highway to the shoulder on the east side of the highway at the site of the accident”. The record furnishes ample support for this conclusion.